UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

02 JUN -7 PM 12: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| RALPH W. TIMBERLAKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| AMERICAN POSTAL WORKERS | ) |
| UNION, AFL-CIO, WILLIAM "BILL" | ) |
| BURRUS, PRESIDENT, AMERICAN | ) |
| POSTAL WORKERS UNION, | ) |
| AFL-CIO, LABOR ORGANIZATION; | ) |
| BILLY WOODS, NATIONAL | ) |
| BUSINESS AGENT; RON NESMITH, | ) |
| NATIONAL BUSINESS AGENT, | ) |
| AMERICAN POSTAL WORKERS | ) |
| UNION, AFL-CIO, LABOR | ) |
| ORGANIZATION, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. CV-02-S-0484-NE

ENTERED

JUN -7 2002

## MEMORANDUM OPINION

Plaintiff, Ralph W. Timberlake, filed *pro se* a complaint alleging that defendants, the

American Postal Workers Union, AFL-CIO, and its agents, William Burrus, Ron Nesmith, and Billy

Woods, breached the duty of fair representation owed to him because of his race (black), age (over

40), and sex (male) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621-634, and the Civil

Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.*  In response, defendants William Burras, Ron

Nesmith, and Billy Woods filed a joint motion to dismiss, asserting that individual union members

are not proper defendants under Title VII, the ADEA, or the Postal Reorganization Act, 39 U.S.C.

§ 1208 (which defendants argue is the applicable statute in this case, not the Civil Service Reform

Act).  Upon consideration of the pleadings and briefs, the court finds that defendants' motion is due

to be denied in part, and granted in part.

Defendants do not assert the Federal Rule of Civil Procedure under which they seek dismissal; therefore, the court will treat the motion as a Rule 12(b)(6) motion, seeking dismissal for failure to state a claim on which relief can be granted.

The Federal Rules of Civil Procedure require that a complaint contain only a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)[1]). Consequently, a complaint should not be dismissed for failing to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46, 78 S.Ct. at 102.[2] When ruling upon a Rule 12(b)(6) motion, the

---

[1] Federal Rule of Civil Procedure 8(a)(2) provides: "A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief...." *See also Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997), stating:

> The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief. It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. ...

*Id.* at 1368-69 (citation omitted); *see also Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

[2] *See also, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (holding that a complaint should be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations" of the plaintiff's complaint); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) (quoting *Conley*, 355 U.S. at 45-46, 78 S.Ct. at 102); *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) ("A complaint may not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief."); *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.) ("[T]he 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)), *reh'g denied*, 840 F.2d 25, *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (same).

court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citation omitted).

Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Such motions accordingly are "viewed with disfavor and rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969), and *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)). Even so,

> the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for
>
>> [i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

*Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13, at 8-118 (2d ed. 1984)).

Parties who appear *pro se*, however, are afforded a leniency not granted to those who are represented by counsel. *Cf., e.g., Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (observing that, "however inartfully pleaded," the allegations of a *pro se*

complaint filed by an inmate of a state penitentiary under 42 U.S.C. § 1983 are held to "less stringent standards than formal pleadings drafted by lawyers"); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (same); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. 1981)[3] ("A *pro se* complaint, however inartfully drafted, must be held to less rigorous standards than the formal pleadings prepared by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Haines*).

Even so, the leniency accorded *pro se* litigants is not unqualified.  As the Sixth Circuit has written:

> While courts must apply "less stringent standards" in determining whether *pro se* pleadings state a claim for which relief can be granted, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), *pro se plaintiffs are not automatically entitled to take every case to trial*. As this court has noted, *the lenient treatment generally accorded to pro se litigants has limits. Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (emphasis added).

A *pro se* litigant may address the deficiencies in his compliant by seeking to amend the complaint under Federal Rule of Civil Procedure 15, which provides in pertinent part that:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.  A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Fed. R. Civ. P. 15(a).

In line with Rule 15(a)'s admonition that "leave [to amend] shall be freely given when justice so requires,"[4] the Eleventh Circuit requires that a plaintiff be afforded an opportunity to amend when it appears that a more adequately pled complaint might state a claim that would survive a motion to dismiss. *See, e.g., Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995) ("Where a more carefully drafted complaint might state a claim upon which relief could be granted, the district court should allow the plaintiff [an opportunity] to amend the complaint rather than dismiss it.") (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) ("Where a more carefully drafted complaint might state a claim, a plaintiff *must be given at least one chance to amend* the complaint before the district court dismisses the action with prejudice.") (emphasis supplied)).

## I. STATEMENT OF FACTS

The facts of this case are not clearly developed, as the court has before it only those facts appearing in the plaintiff's complaint filed February 22, 2002. Plaintiff names as defendants:  the American Postal Workers Union, AFL-CIO ("APWU" or "the Union"); William Burrus, president; Billy Woods, business agent; and Ron Nesmith, business agent.  Invoking this court's jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621-634 ("ADEA"), and the Civil Service

---

[4]Federal Rule of Civil Procedure 15(a) provides:

> **(a) Amendments**.  A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.  A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* ("CSRA"), plaintiff alleges:

> The American Postal Workers Union[,] AFL-CIO and its agents unlawfully failed to render to the Plaintiff, Ralph W. Timberlake, their Duty of Fair Representation on the Following Dates: May 10, 1999, and on September 22, 1999, July 2000, September 2000, November 2000, April 2001 through November 2001, because [of] my race, (Black), age, (over 40), sex (male).  The actions and inaction caused the following harm:  1.  *I was removed in retaliation for exercising my rights to file complaints against the USPS* [United States Postal Service] with the Merit System Protection Board, National Labor Relations Board, and the Equal Employment Opportunity Commission.  2.  I was deprived of my rights to privacy.  My medical information was given to be previewed by people without my permission written or other wise. [sic]  3.  I was not allowed due process because I was unable to preview the information used against me after requesting to preview and have copy of said information.  4.  I was not allowed to present my case to my Supervisor for unknown reasons.  5.  The union refused to ensure that I was compensated for the unlawful time I was not allowed to work.  6.  The union refused to arbitrate my grievances; the union settled my grievances in a manner that was harmful to me.[5]

In his prayer for relief, plaintiff further states:

> I want the court to set aside the Settlement of September 15, 2000, between the American Postal Worker Union *and The United States Postal Service* and remove the case from my records.  I want the court to order *the Postal Service* to afford me my rights as a veteran to pursue my rights to a hearing before the Merit System Protection Board.  I want the court to fine the Defendant $200,000 (two hundred and fifty thousand dollars) [sic] and another $250,000 for pain and suffering.  I want full back pay with 20% interest for the time I was forced from my lawful employment. I want the American Postal Workers Union, AFL-CIO to reimburse me for the cost of successfully contesting these unlawful acts against me.  I wish to be made whole. I want all of my medical expenses paid for by the American Postal Workers Union[,] AFL-CIO.  I want to be placed in a job free of hostility toward me.[6]

After filing the compliant, plaintiff served William Burrus, Billy Woods, and Ron Nesmith

at their respective business addresses.  Following receipt of notice, Burrus, Woods, and Nesmith

jointly filed the subject motion to dismiss,[7] and the American Postal Workers Union, AFL-CIO filed

---

[5]Compliant (doc. no. 1) ¶ 4 (emphasis supplied).

[6]*Id.* (doc. no. 1) ¶ 5 (emphasis supplied).

[7]Defendant's "Motion To Dismiss Of William Burrus, Ron Nesmith and Billy Woods" (doc. no. 6).

an answer.[8]

## II. DISCUSSION

### A.    Plaintiff's Claims Under Title VII And ADEA

Defendants Burrus, Woods, and Nesmith contend that they are not proper defendants because suits against individual defendants are inappropriate under either Title VII or the ADEA.[9]  Before addressing whether plaintiff may maintain a suit under Title VII or the ADEA against defendants in their individual capacities, the court must first address whether defendants are proper defendants in *any* capacity under Title VII or the ADEA.

> Although Title VII does not on its face define who can sue under the statute, it does clearly define who can be sued.  A plaintiff may bring a Title VII action against any *"employer,"* defined as "a person engaged in an industry affecting commerce who has fifteen or more employees [for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person....]"  42 U.S.C. § 2000e(b).

*Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244 (11th Cir. 1998) (emphasis supplied).[10]

The Eleventh Circuit addresses the issue of "whether a defendant meets the statutory definition of 'employer' as a threshold jurisdictional matter under Title VII...."  *Lyes v. City of Riviera Beach, Florida*, 166 F.3d 1332, 1340 (11th Cir. 1999) (*en banc*) (citing *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1359 (11th Cir. 1994)).  "[A] plaintiff must show that her 'employer' had fifteen or more employees for the requisite period provided under the statute before her Title VII claims can be reached."  *Lyes*, 166 F.3d at 1340-41; *see also Owens v. Southern*

---

[8]Answer of defendant American Postal Workers Union, AFL-CIO (doc. no. 7).

[9]Defendants' Memorandum in Support of Motion to Dismiss, at 3.

[10]The term "person" is defined as including "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers."  42 U.S.C. § 2000e(a).

*Development Council, Inc.* 59 F. Supp. 2d 1210, 1213 (M.D. Ala. 1999) (Thompson, J.).

Accordingly, plaintiff may maintain an action under Title VII or the ADEA only against his

*employer*. Therefore, he must allege in his complaint by whom he is employed, and that his

employer is an employer as defined under Title VII and the ADEA. In this instance, plaintiff failed

to provide the court with the identity of his employer, however, the identity of plaintiff's employer

may be deduced by looking at the complaint in its entirety. Plaintiff seeks to recover against the

Union for breaching its duty of fair representation; implicit in his claim is that he is a member of the

Union, not its employee, because the Union owes a duty of fair representation only to its members.

Further, in order to be a member of this particular union, the American Postal Workers Union, AFL-

CIO, plaintiff must be, or must have been an employee of the United States Postal Service.

Therefore, plaintiff can not maintain a claim against Burrus, Woods, and Nesmith in their official

capacities as agents of the Union, because the Union is not plaintiff's employer.

Nor can plaintiff maintain claims against Burrus, Woods, and Nesmith in their individual

capacities, because such suits are inappropriate under Title VII and the ADEA.

> Individual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.

*Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (citations omitted) (emphasis in

original). *Accord, e.g., Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Smith v.*

*Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995). "The only proper individual defendants in a Title VII

action would be supervisory employees [who are sued] in their capacity as agents of the employer."

*Hinson v. Clinch County*, 231 F.3d 821, 827 (11th Cir. 2000). The same applies to suits under the

8

ADEA. In the Eleventh Circuit, ADEA claims, like Title VII disparate treatment claims,[11] lie against the employer, not individual employees. Stated differently, individual capacity suits are not appropriate. *See Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (citing with approval *Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir.) ("[T]he ADEA limits civil liability to the employer."), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994), and *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (same), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994)).

Accordingly, plaintiff's claims against William Burrus, Billy Woods, and Ron Nesmith either individually, or in their official capacities must be dismissed.

## B.     Plaintiff's Claims Under the Civil Service Reform Act

Plaintiff also alleges that he was denied his right to fair representation by the American Postal Workers Union and its agents in violation of the Civil Service Reform Act (CSRA). Burrus, Woods, and Nesmith argue that "[a] judgment cannot be recovered against an individual acting as an agent of a postal union, 39 U.S.C. Section 1208(c) [of the Postal Reorganization Act]. Thus, the Individual Union Defendants who plaintiff identities as employees and agent of the APWU and the Local, are not proper defendants in this case."[12] Defendants further argue:

> Plaintiff cannot avoid dismissal of the individual Union Defendants under 39 U.S.C. Section 1208 by his assertion that his "petition" is governed by the provisions of the Civil Service Reform Act of 1978 and EEOC Regulations, 29 C.F.R. Section 1614.303[[13]] et seq. Neither is applicable in this suit. First, the Civil Service Reform Act governs cases involving Federal employees, not employees of the United States Postal Service ("Postal Service" or "USPS"). While plaintiff does not directly plead

---

[11]*See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (no individual liability under Title VII).

[12]Defendants' Memorandum in Support of Motion to Dismiss, at 1.

[13]29 C.F.R. § 1614.303 allows an individual to petition the EEOC for review of adverse decisions entered by the MSPB [Merit Systems Protection Board].

that his employment was with the United States Postal Service ("USPS" or "Postal Service"), his references in ¶ 5 to the Postal Service can be used as an admission that he was a postal worker. As such, the statute governing his employment was the Postal Reorganization Act as amended, Title 39, U.S.C. [sic], not the Civil Service Reform Act, except to the extent provision of Title 5 U.S.C. [sic] were made applicable to postal employees by the Postal Reorganization Act. Second, the EEOC Regulations cited by plaintiff are equally inapplicable. They are entitled "Petitions to the EEOC from MSPB [Merit Systems Protection Board] decisions on mixed case appeals and complaints." They do not govern a charge of breach of the duty of fair representation against a union.[14]

While defendants correctly assert that plaintiff may not maintain a claim for breach of duty of representation under the CSRA, their reasoning is flawed. Defendants have assumed that plaintiff's status as a postal employee prevents him from seeking the protections afforded under the CSRA. In *United States Postal Service v. Gregory*, 534 U.S. 1, 122 S. Ct. 431, 151 L.Ed.2d 323 (2001), however, the Supreme Court allowed a postal employee to avail herself of the protections provided by the CRSA. The Supreme Court observed that

> Because respondent previously served in the Army, she falls into the category of "preference eligible" Postal Service employees covered by the Civil Service Reform Act of 1978 (CSRA). 5 U.S.C. § 7511(a)(1)(B)(ii). The CSRA provides covered employees the opportunity to appeal removals and other serious disciplinary actions to the Merit Systems Protection Board (the Board). §§ 7512-7513. Under the CSRA, respondent could appeal her termination to the Board or seek relief through the negotiated grievance procedure, but could not do both. § 7121(e)(1).

*Gregory*, 534 U.S. at —, 122 S. Ct. at 433. Under 5 U.S.C. § 7511, an "employee" includes "(B) a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions ... (ii) in the Unites States Postal Service or Postal Rate Commission." The term "preference eligible" as used in § 7511 refers to a civil service employee who is also a veteran. The definition of "preference eligible" is found in § 2108 along with the definition of veteran as used within the CSRA:

---

[14]Defendants' Memorandum in Support of Motion to Dismiss, at 4-5, n.3.

For the purpose of this title–

(1) "veteran" means an individual who —

(A) served on active duty in the armed forces during a war, in a campaign or expedition for which a campaign badge has been authorized, or during the period beginning April 28, 1952, and ending July 1, 1955;

(B) served on active duty as defined by section 101(21) of title 38 at any time in the armed forces for a period of more than 180 consecutive days any part of which occurred after January 31, 1955, and before October 15, 1976,  not including service under section 12103(d) of title 10 pursuant to an enlistment in the Army National Guard or the Air National Guard or as a Reserve for service in the Army Reserve, Naval Reserve, Air Force Reserve, Marine Corps Reserve, or Coast Guard Reserve;  or

(C) served on active duty as defined by section 101(21) of title 38 in the armed forces during the period beginning on August 2, 1990, and ending on January 2, 1992;

and who has been separated from the armed forces under honorable conditions;

(2) "disabled veteran" means an individual who has served on active duty in the armed forces, has been separated therefrom under honorable conditions, and has established the present existence of a service-connected disability or is receiving compensation, disability retirement benefits, or pension because of a public statute administered by the Department of Veterans Affairs or a military department;

(3) "preference eligible" means, except as provided in paragraph (4) of this section--

(A) a veteran as defined by paragraph (1)(A) of this section;

(B) a veteran as defined by paragraph (1)(B) or (C) of this section;

(C) a disabled veteran;

(D) the unmarried widow or widower of a veteran as defined by paragraph  (1)(A) of this section;

(E) the wife or husband of a service-connected disabled veteran if the

11

veteran has been unable to qualify for any appointment in the civil service or in the government of the District of Columbia;

(F) the mother of an individual who lost his life under honorable conditions while serving in the armed forces during a period named by paragraph (1)(A) of this section, if —

(i) her husband is totally and permanently disabled;

(ii) she is widowed, divorced, or separated from the father and has not remarried;  or

(iii) she has remarried but is widowed, divorced, or legally separated from her husband when preference is claimed;  and

(G) the mother of a service-connected permanently and totally disabled veteran, if —

(i) her husband is totally and permanently disabled;

(ii) she is widowed, divorced, or separated from the father and has not remarried;  or

(iii) she has remarried but is widowed, divorced, or legally separated from her husband when preference is claimed;

but does not include applicants for, or members of, the Senior Executive Service, the Defense Intelligence Senior Executive Service, the Senior Cryptologic Executive Service, or the Federal Bureau of Investigation and Drug Enforcement Administration Senior Executive Service;

(4) except for the purposes of chapters 43 and 75 of this title, "preference eligible" does not include a retired member of the armed forces unless —

(A) the individual is a disabled veteran;  or

(B) the individual retired below the rank of major or its equivalent;  and

(5) "retired member of the armed forces" means a member or former member of the armed forces who is entitled, under statute, to retired, retirement, or retainer pay on account of service as a member.

5 U.S.C. § 2108. Plaintiff asserts that he is a veteran. While he does not provide the specific details of his service in the armed forces, given the opportunity to amend his complaint, he possibly could provide sufficient detail to establish his status as a veteran and, thus, a "preference eligible" under the CSRA.

Even so, plaintiff's claim under the CSRA still fails, as the CSRA does not provide a private cause of action for a breach of the duty of fair representation. In *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989), the Supreme Court addressed the question of "whether Title VII of the Civil Service Reform Act of 1978 (CSRA or Act), 5 U.S.C. § 7101 *et seq.* (1982 ed. and Supp. IV), confers on federal employees a private cause of action against a breach by a union representing federal employees of its statutory duty of fair representation." In determining that the CSRA does not provide such a remedy, the Supreme Court observed:

> Prior to 1978, labor relations in the federal sector were governed by a 1962 Executive Order administered by a Federal Labor Relations Council whose decisions were not subject to judicial review. *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 91-92, 104 S.Ct. 439, 441-442, 78 L.Ed.2d 195 (1983). Since 1978, Title VII of the CSRA has been the controlling authority. Of particular relevance here, 5 U.S.C. § 7114(a)(1) provides that a labor organization that has been accorded the exclusive right of representing employees in a designated unit "is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership." This provision is "virtually identical" to that found in the Executive Order and is the source of the collective-bargaining agent's duty of fair representation. *See National Federation of Federal Employees, Local 1453,* 23 F.L.R.A. 686, 690 (1986). This duty also parallels the fair representation obligation of a union in the private sector that has been found implicit in the National Labor Relations Act (NLRA), 49 Stat. 449, as amended, 29 U.S.C. § 151 *et seq.* (1982 ed. and Supp. IV), and the Railway Labor Act (RLA), 44 Stat. 577, as amended, 45 U.S.C. § 151 *et seq. See Vaca v. Sipes,* 386 U.S. 171, 180-183, 87 S.Ct. 903, 911-913, 17 L.Ed.2d 842 (1967); *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 205-207, 65 S.Ct. 226, 233-234, 89 L.Ed. 173 (1944).

Title VII also makes it clear that a breach of the duty of fair representation is an unfair labor practice, for it provides that it is "an unfair labor practice for a labor organization ... to otherwise fail or refuse to comply with any provision of this chapter." § 7116(b)(8). Under § 7118, unfair labor practice complaints are adjudicated by the FLRA [Federal Labor Relations Authority], which is authorized to order remedial action appropriate to carry out the purposes of Title VII, including an award of backpay against either the agency or the labor organization that has committed the unfair practice.

There is no express suggestion in Title VII that Congress intended to furnish a parallel remedy in a federal district court to enforce the duty of fair representation. *The Title provides recourse to the courts in only three instances: with specified exceptions, persons aggrieved by a final FLRA order may seek review in the appropriate court of appeals, § 7123(a); the FLRA may seek judicial enforcement of its orders, § 7123(b); and temporary injunctive relief is available to the FLRA to assist it in the discharge of its duties, § 7123(d).*

...

Congress undoubtedly was aware from our cases such as *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that the Court had departed from its prior standard for resolving a claim urging that an implied statutory cause of action should be recognized, and that such issues were being resolved by a straightforward inquiry into whether Congress intended to provide a private cause of action. Had Congress intended the courts to enforce a federal employees union's duty of fair representation, we would expect to find some evidence of that intent in the statute or its legislative history. We find none. Just as in *United States v. Fausto,* 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988), we held that the CSRA's "integrated scheme of administrative and judicial review" foreclosed an implied right to Court of Claims review, we follow a similar course here. *See also Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 2416, 76 L.Ed.2d 648 (1983). To be sure, courts play a role in CSRA § 7116(b)(8) fair representation cases, but only sitting in review of the FLRA. To hold that the district courts must entertain such cases in the first instance would seriously undermine what we deem to be the congressional scheme, namely to leave the enforcement of union and agency duties under the Act to the General Counsel and the FLRA and to confine the courts to the role given them under the Act.

*Karahalios,* 489 U.S. at 531-37, 109 S.Ct. at 1285-89 (emphasis supplied). Accordingly, this court does not have jurisdiction to hear those claims plaintiff asserts against the individual defendants under the CSRA,[15] and those claims must be dismissed.

[15]The court further observes solely for plaintiff's benefit that had he asserted claims under the Postal

## III. CONCLUSION

A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this ___7th___ day of June, 2002.

United States District Judge

---

Reorganization Act, those claims would be barred by the six-month statute of limitations applicable to such claims. *See Edwards v. National Post Office, Mail Handlers, Watchmen, Messengers and Group Leaders Division of the Laborers' International Union of North America, AFL-CIO Local Union 304*, No. 90-CV-2121, 1991 WL 495637, at *7 (N.D. Ohio April 30, 1991) ("Courts have ... interpreted [39 U.S.C.] § 1208(b) [of the Postal Reorganization Act] through § 301 [of the Labor Management Relations Act, 29 U.S.C. 185(a)] and held that the same six month statute of limitations applies to both statutes.") (citing *Vaden v. Unites States Postal Service*, 787 F.2d 594, No. 84-6106 (table, unpublished disposition, 6th Cir. 1986) (text in WESTLAW); *United States Postal Service v. American Postal Workers Union, AFL-CIO*, 893 F.2d 1117, 1122 (9th Cir. 1990), *cert. denied American Postal Workers Union v. Postal Service*, 111 S.Ct. 67; *Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988); *Abernathy v. United States Postal Service*, 740 F.2d 612, 616 (8th Cir. 1984); *Elliot v. United States Postal Service*, 621 F. Supp. 1093, 1098 (W.D. Mich. 1985)).

The last act of which plaintiff complains occurred in November of 2001. Plaintiff filed his complaint in this court on February 22, 2002, nine months after the statute of limitations had run under the Postal Reorganization Act.